Good morning. May it please the Court, I'm Attorney Robert Barnes representing Matthew Kale. I believe a recent decision of this Court answers most of the questions raised in this case, and that would be Ringhofer v. Mayo, docket number 23-2994. It has some other docket numbers because five cases were part of it. Eighth Circuit 2024, I believe currently Mayo is considering whether to file a petition for cert, so I don't think it has a publication number beyond that. But this Court intended to publish the decision. The notable facts in that case is five individuals were required to take the COVID vaccine or to do testing or they would lose their employment. They filed an EEOC complaint before they were fully terminated, didn't include all of the potential claims in that complaint, but the core of it was put, the EEOC and the defendant were put on notice. They filed suit. It wasn't the most artful complaint. The District Court dismissed because the District Court determined that they didn't include all of their legal theories in the original EEOC charge. That was part of the reason. The other reason was that their complaint was read as not being plausible in terms of their religious objections. They said their religious objections to both the vaccine and the testing was they considered the vaccine to be an experiment on their bodies that would violate their body as their temple under their religious beliefs. And they applied it. But here the person could just do testing, right? It was two things. So they were ordered to take the vaccine. And initially their employer said or they could take a particular kind of COVID test. They responded, I think it's appellate record 46 and 47, they responded saying they'll take the self-testing that had been done during COVID. Their employer then said that wouldn't suffice. So it comes down to testing. Early on, as the complaint alleges, later on in January, he was told he had to get vaccinated or he would be terminated. So the initial part was about testing. The subsequent part, they didn't give him a testing option. They said that he would have to take the vaccine or be terminated. And that's at appellate record 47. Now, are you referring to first amended complaint for that? Yes, Your Honor. Okay. What paragraph of the first amended complaint says that? I believe it's 22-1 at paragraph 4, I believe, Your Honor. Paragraph 4. That's what I have. He offered the self-screening and then appellate record 47, where it was tied to the vaccine. I just have it as the appellate. It's put in the red as a whole. That's what it is. I read that, as you know, in Ringhofer, it's set out in detail what they did say in their complaint. Yes, Your Honor. That's correct. Right. And it's quite detailed, and here it's not detailed. Not in the initial pro se one. And in the amended one, some facts were alleged, and I believe the district court even interpreted the complaint as red as a whole as saying that he would have to be vaccinated to continue work or he would be fired in January. That's at the later stage. So there's this first stage and this second stage. But even if we assume the same testing requirement was imposed, Ringhofer addressed that question as well because in Ringhofer, two people were offered the testing alternative to the vaccine. They, too, had a religious objection. Well, take a look at the facts that are in 34, 35, and 36. I'm going by paragraphs of the amended complaint. I know the amended complaint wasn't accepted, but let's start with it. All I see is the one paragraph that talks about intrusions into my body. Yes, Your Honor. And the next 30, paragraph 37, says on the same grounds, plaintiff objected to weekly testing on the same grounds. Yes, Your Honor. And so when he originally ---- Now, some testing is not intrusive. That is correct. Okay. Now, what tells us whether the testing here is intrusive or not intrusive? As to that, well, I would compare it to appellate record 46 at paragraph 4 where he talked about he was willing to do self-screening, self-testing. Now, what do you refer to? Yes, Your Honor. I believe his original EEOC complaint and his original Pro Se complaint identified that he was saying, I have the same objections that I believe the test experiments on my body in the same way that the vaccine does. Now, he articulated it like a Pro Se employee. He said it was the same objections as the one I gave to the vaccine. But I would note that's very similar to Ringhofer. In Ringhofer, they didn't detail the testing as much. They said, we object to the testing on the same grounds as the vaccine. They said solely that their body was their temple. And clearly abortion, for example, fetal cells weren't part of the testing in either end, but they said their body as their temple was their objection. Well, counsel, if you look at Ringhofer, the first one looks like kind of a Christian science. Yes, Your Honor. I'll give it that. You're with me. The first point is going to a doctor to allow testing. And the others are, and these are about testing, and theirs are very detailed. This is Rubin and IHDE, I guess. Tell me how you meet that standard that's set forth in Ringhofer. I know you didn't know about Ringhofer when you wrote the complaint. It's not personal. Tell me how the complaint meets this. Yes, Your Honor. It's twofold. One is that he, what they have left, one of the grounds objected to that were listed in the Ringhofer was that his body was his temple and that he considered testing to violate that. And that's similar to what he has alleged here. He has said his body is his temple, and he believes that testing violates his religious objection. But of note, it's not any testing. It says intrusions. Go ahead, counsel. Yes, Your Honor. That's correct. The reason why we can, like if we step back, one thing Ringhofer does well is it interprets the complaint as a whole. And with a pro se complaint and with an EEOC charge, because it's not a litigant, we interpret it very liberally. I think a, I'm sorry, Your Honor. I thought Judge Holcomb was trying to ask a question. Oh, I'm sorry. Okay. If we step back and look at it, what he's saying is. And testing for the same reason. That is not, if intrusions, the testing problem here is it's just personal. The reason why we. By any objectively reasonable interpretation of a religious belief versus a personal belief, this is personal. Except, well, I think that's only if we interpret it most liberally against him. If we interpret the complaint as a whole most liberally in his favor. That's just, okay. I mean. That's rhetoric. You know, that. I think the reason we do that is we have an ordinary employee here. He doesn't know all the fancy issues of the law. Personal versus religious, a jury question or a court question? It is when he says it's the same as, when he. Yes or no? Which is it? It's a religious objection. And he says so. Is the question whether it's a bona fide religious belief versus a personal belief? Is that for the jury or for the court? It is. There's a case law on that. Yes, Your Honor. It is for the jury if he puts forward any basis by which it can be interpreted as a religious objection. What case does that? Supreme Court case of Thomas, for example. It doesn't matter if it's religious. I didn't hear. You're talking too fast. I'm sorry. What Supreme Court case? So in Thomas, it talks about evaluating religious decisions. At 450 U.S. 707 at 714, 1981. And it made clear that even though the person in that case, you could argue it was not religious, you could argue that the religious belief couldn't be religious because it's implausible, because it's incomprehensible, because it's indistinguishable from a personal belief. And the Supreme Court said that courts are not free to reject someone's asserted religious belief because it is incomprehensible, because it is implausible, for any of those reasons. As he said, his belief was religious. Okay. That doesn't say whether it's for the jury or not. It sounds like a legal standard to me. Yes, Your Honor, for the purposes of the motion to dismiss stage of the case. So at this stage of the case, a liberal interpretation of what he's alleging is he's saying it's his religious objection to the test. If you try this case, does the jury do anything other than resolve disputed facts on this question? The jury only resolves disputed facts, Your Honor. The ultimate legal question of whether it's a bona fide religious belief is still for the court. I think, well the It means that the motion to dismiss stage, the question is, is there enough for, does the court need an advisory jury? If the answer is no, then it's a bona fide 12B6 issue. It is, but the plausibility is whether he has plausibly alleged a religious belief, not whether the religious belief itself is plausible. I thought we looked at the totality of the allegations. Not in this context. There's no allegation on testing here. Well, there's two different questions issues. Intrusions. Well, there's two different issues here, Your Honor. One is the complaint can be liberally interpreted that it required him to actually be vaccinated before he was terminated. I believe that is a fair interpretation when read as a whole, when liberally read in his favor, that that's what is being alleged. But this also all goes to amendment. Look at what litigants are being put into a position of. Okay. I'll give an example. This complaint is far more detailed than every EEOC complaint that has ever been brought in this court or any other and has never been challenged before as inadequately alleging. Well, let me ask you this. I want to follow up. So there's the question of religious beliefs. But there's a follow-up question I think is really inadequately dealt with in the complaint, which is how it conflicts with his religious beliefs. So even if we assume that on the ground stated is good enough, I'm looking at the amended complaint, and I don't see any explanation of how there's a conflict. Okay. So he says there's a conflict. That's not good enough, though. You've got to explain what the conflict is in order to comply with Iqbal. I don't see it that way, not in a religious context. You could just say I have a religious belief and then let everyone else sort of figure out, you know, how it conflicts. The religious belief can be as simple as my body is my temple. That's all Ringhofer had. Ringhofer doesn't cite any other religious belief. Maybe there was other religious beliefs cited in the record, but it's not in the opinion. In the opinion, it said that alone suffices to say your body – and I can tell you, you can go look it up yourselves. Every EEOC complaint ever – Which case says that alone is enough? Ringhofer, Your Honor. And, in fact, you can find similar decisions that cite Ringhofer, that agree with Ringhofer, that almost every appellate court in the country is saying that at this early motion-to-dismiss stage, when assessing whether or not amendment is an option, that alleging body is a temple is sufficient. See, I don't agree, because here's the problem. So on the testing, for example, right, if you say my body is the temple, you're not telling them what the testing is, how the testing conflicts with that idea. I mean, it's one thing to say my body is a temple. I'm not going to be vaccinated, right? I don't want to pinprick. But it's a whole other thing to say I'm not going to – you know, I also don't – it also conflicts because I – you know, you have to take the, you know, saliva or put it in your nose or whatever. Yes, Your Honor. So two things here. First, I think it's fair when liberally interpreting the complaint in his favor and read as a whole. He does say he agreed to self-screening and self-testing. So that tells us that this testing is beyond just any kind of testing. What tells us that? Yes, Your Honor. On Appellate Record 46, he says he agreed and told the employer he would agree to self-screening and self-testing. So that tells us it wasn't just – It doesn't say anything about whether the non-self-testing is intrusive. He says – he says it was and it violates his religious objection. But I think what the Court is pointing to is why we believe the amendment would be appropriate. I want the Court to step back and look at what's happening broadly in these cases. In these cases that are relatively new in the sense that mass vaccine mandates are unheard of in American legal history. So we're in some uncharted legal place. There's a 1905 Supreme Court case in there on mass vaccinations. There, that was whether the State could do a polio vaccine, but not employers doing vaccine. Okay, proceed. Well, let me – I just want to – I want to add one thing. So you mentioned self-testing, but my understanding of self-testing was he just wanted to do a self-temperature check. It wasn't one of those over-the-counter tests during the COVID. So what does that – I mean, how does that help us? Well, that's where I think amendment can be helpful. In other words, when we're coming to the courts and we followed the EEOC complaints, and the EEOC complaints are very bare bones. They just say stuff like religious objection, bodies of temple. No other detail. No other description. So that's what we relied upon. We're being told now by courts that's not adequate. Some courts want, like, a whole religious dissertation. Some want something in between. Some want explain more about the vaccine and how it conflicts, or explain more about testing and how it conflicts, or any other method. That's what we asked for amendment, that if we had missed something, if the court What courts all over the country are doing, the question for us is did Judge Schreier commit reversible error? Yes, Your Honor. And it – the court did. Because what the court did was prevent about all courts are doing this on some other way. That's a fair point, Your Honor. I just wanted to make sure to understand the context of which we're approaching this. That the reason why the law allows liberal amendment is for precisely circumstances like these, where this Court wants more detail. But when – well, when was the motion to amend brought? It was brought – it was timely brought. The Court didn't dispute that. After they brought their motion to dismiss. And we laid out an amended complaint of what could be alleged. The Court said that, too, was inadequate. But then we would ask, okay, then if the Court wants more detail, we can provide that. That's what amendment is for. Amendment is for answering the questions that you're asking. Not three, four, or five times. The – just – District courts don't have to put up with that. No, Your Honor. But here, this was a pro se litigant. We – Not the amended complaint. Not the lit – not the amended one. Now you're saying if the amended complaint wasn't good enough, then she has to let me do two, three, or four retries. We're asking for just one – one retry. Here at the beginning, again, these are – On a very deferential abuse of discretion standard. The – but when it's – but it's supposed to be liberally granted in cases like this. No, not at this – not – all right. You can say that. I understand that. You can say that. But what you're doing is you're putting litigants in an impossible position. That's what you're doing. You're screwing them over. I mean, you're shafting them. Don't – don't say that. Yeah, but that's what would happen.  But that's what would happen, Your Honor. But that is what would happen. Ordinary employees – No, that's – you know. Your Honor, I mean – Your time is up. Oh, my apologies. Thank you, Your Honor. Mr. Sutton. Thank you, Your Honor. Morning. May it please the Court. Counsel. Counsel. As this Court has already articulated in its questions, the case – the issue in this case really comes down to this. Did Matthew Kale, either on his own in his pro se complaint or with the assistance of counsel, in a 33-page, elaborate, detailed pleading, actually allege facts that establish that there was either a violation of Title VII based upon failure to provide a religious accommodation or violation of the ADA? And the facts, or more importantly, the lack of facts, establishing the question here is no. And I'm going to jump to Ringhofer right away because I think that that is one of the key issues. And, Judge Benton, I know you know that case well. So – but this case is not Ringhofer for two very critical reasons. One, the facts of Ringhofer as pled regarding the testing are materially more detailed. Two, there's a secondary issue in this case in the pleadings that, at least in the opinion, does not appear to be addressed in Ringhofer, which is, based upon the undisputed facts pled here, there would be an undue burden as a matter of law to allow the exception. And I'll get to that in a minute. But let's start with this. What did this Court remind us in Ringhofer is the test for a Title VII failure to accommodate case? And that's really what this is. This is not a Title VII religious discrimination case. There's no pleadings indicating that Mr. Kale was treated differently than other similarly situated employees based on his religion. It's really a failure to accommodate case. And what it tells us is in that situation, there are three things you must prove. One, you have a bodified religious belief that conflicts with the employment requirement the employee has. Two, that the employee informed the employer of that belief. And three, that they were disciplined for failing to comply with the conflicted requirement of employment. And I start there because the last element establishes why this is a testing case, not a vaccination case. And that's a very critical distinction that the plaintiffs want to ignore. This case is about testing because he was never disciplined, as alleged in the complaint, for not being vaccinated. He was provided an accommodation. He had the ability to comply with testing. And it's important to look at paragraph 1415 of the amended complaint. And we hear and we've heard from counsel that you have to construe this broadly. That would be true if there wasn't a proposed amended complaint. This is a highly detailed amended complaint, drafted with the assistance of counsel. And even with that amended complaint, they can't get there. When you look at paragraph 1415, here's why the testing is the question. The Directorate of the Air Force required a Federal mandate that anybody on the Ellsworth Air Force Base or any Department of Defense location either was vaccinated or was tested consistent with the methods that they directed in their manual. That's a mandate from the Federal Government. My client, Aerosimulation, Inc., is a private contractor. Its employees, Mr. Cale is working on the Ellsworth Air Force Base. He can't get on the base. He can't do his job. Pretty simple. And the Federal Government says you have this date, and if you're either being tested or you're vaccinated, you're not allowed on the base. So that really comes back to what was the discipline here. He was given a choice. You either have to be vaccinated. We understand if you request an accommodation, don't want to be vaccinated. If not, you've got to apply with the weekly testing and the method dictated by the Federal Government. But there was no religious exemption beyond that. I mean, a lot of these mandates actually involved a sincerely held religious belief. You can get an exemption, and, you know, there's sort of the herd immunity and all of that kind of thing. And so this is not a case where there was a third option, correct? Correct. As mandated by the Federal Government, those were the two options. It's either testing in the method that they provided or as vaccinated. Well, in other courts, I mean, you heard opposing counsel mention other courts. But other courts have held that these mandates from the armed forces were unconstitutional without some sort of religious exemption. So why should we come out differently than they did just because it was the military? Because here's the decision. That isn't the question before this Court here today. The question before this Court here today is whether the failure to provide the religious accommodation was a violation of Title VII. And then correspondingly, whether my client had to guess what the courts were going to do on a go-forward basis and say, you know what, we understand that the Air Force is saying our employees can't be on here, but we don't mind, we're going to carve out our own exception. That's the undue burden analysis. So Judge Strauss, respectfully, I don't think that's the question before the Court today. That may be a question in a different case. The case here today is what do the pleadings show? And Judge Benton hit the nail on the head. It's paragraph 37. That's the only connection in any way, shape, or form in a 33-page complaint as it relates to the testing requirement. Now, I went back through. There's also, I think, paragraph 20 where he generally states that it's inconsistent with his religious beliefs, but there's no connection. There's no explanation. At least on the record before you, I'm not even sure that I know what the test is. And that is the fundamental problem in the pleading that's here. And I think most One more point that you said. This isn't an intentional discrimination case, but what do you do with the Cole case? Where the Cole case said that even without evidence of employees that are religious and non-religious being treated differently, the mere refusal to give an exemption, which gets back to my earlier question, can't be enough to show an inference of discrimination. It's Cole v. Group Health Plan, 105 F. 4th, 1110. As I'm sitting here candidly, Judge Strauss, I don't have that case off the top of my head. What I would submit this is different because you don't have any articulation in the pleadings where Mr. Cale was treated differently than a similarly situated employee. The policy was applied to everyone, and he wasn't excised or segregated, even in application in comparison to the other employees. This was a general policy, and he asked for an accommodation, and that's pled, but we were not in a position to do so based on the mandate of the Federal Government. So when you get back to the testing issue, fundamentally in the accommodation, there are no facts. And I think, you know, what struck me as I reread this last night, the heading right before Paragraph 34 of the complaint. Now, Paragraph 37 is the only paragraph that has any sort of real allegation regarding the interconnection with testing. What does that big, bold heading describe, Paragraph 34? COVID vaccines violate plaintiffs' religious beliefs. This complaint is about the vaccine. It is not about testing. There's extensive factual allegations in these pleadings as it relates to their basis for religious objections based upon the sanctity of changing the RNA and their body as the temple, their discussions about the use of fetal stem cells from abortions, any suggestion that they didn't know how to plead a claim to explain how it conflicted with their religious basis is insane when you read this as a whole. It would have been better, obviously, if you would have pleaded the specifics of why the testing, and you heard me ask questions about that. But I'm wondering, sometimes you can, if it's encompassed by the pleadings and there's documents in the record, you can consider those with the motion to dismiss. You mentioned policies of the military, and my question is, are those policies the material, policies in the record such that we know what the testing entailed? What did, what would have happened? The answer is no, it's not in the record. The only reason that there's a reference to what you can look at is Paragraph 14 and 15 of their amended complaint. So the policy itself is not in the record, and I'll tell you, Judge Strauss, I'm not, I can't answer the question is exactly what was required. But that's not the burden of the defendant. They need to plead the fact. Well, you see why I'm asking the question. If it looked a lot like the vaccine, then maybe you have a case where you can draw an inference, where if they're, you know, taking blood or testing your blood or whatever. But without that, it becomes really hard to figure out what the religious objection is. Exactly. Which is why in Ringhofer, where they have more specific facts, they stated a claim. Here, it's the obligation of the plaintiff, who had the assistance of counsel, to articulate those facts so this Court and the defendant can reasonably evaluate what the basis of the objection is. Not whether the objection is well-founded. Not whether the objection is true, and not even whether he really believes it. At the pleading stage, we just have to know what the factual basis for the objection is. That's the missing link. I want to move to the undue burden issue, because that's not directly addressed in Ringhofer. Here's why I think this is materially different, and why even separate from Ringhofer, you should dismiss the Title VII case. Under the definition of religion, when you look at it in Title VII, 42 U.S.C. 2000e subsection J, it says, religion includes all aspects of religious observance and practice, as well as belief. And then there's an exception. And I'll admit that exception shifts the burden to the defendant. But here on the facts as pled, the exception's established. Unless an employer demonstrates that he's unable to reasonably accommodate to an employer or prospective employee's religious observance or practice without an undue hardship on the conduct of the employer's business. And this Court has recognized, Seaworth v. Pearson, when the Federal Government issues a mandate, and the employee comes to an employer and says, I don't want you to comply with that mandate because of my religious viewpoint. That case was a case involving submitting their Social Security numbers to the Federal Government. And this Court ruled as a matter of law, that was a judgment on the pleadings case, that that established an undue burden because the requirement was being imposed by the Federal Government. There's also go ahead. So that case is not in your brief, right? The case you just mentioned? Spell it if you need to. It's I'm looking at your index. S-E-A-W-O-R-T-H It is. It is. Proceed. And you're, Judge Benton. Okay. It is in my, in our brief? It is, yeah. Okay. Sorry. All my cases were printed and I read it last night. I wasn't sure. But when you step back, this Court has also recognized in the context of post offices, that when there was a CBA, a collective bargaining agreement, that as a matter of law, if you had to violate your collective bargaining agreement to accommodate a religious request, that that would be an undue burden. And then finally, this Court The undue burden has to be legal, right? It can't be an unconstitutional undue burden. But I would submit that my client can't be, shouldn't be placed in the position of having to make that decision. Because here's the problem with that. From the perspective of when they're making the call in deciding whether they need to comply with federal law, are they, should they make the decision in saying, I'm going to disregard federal law in the interest of this accommodation, regardless, because the focus is on their business. That's what the statute says. Undue burden on their business. If they need to be in a position where they can make a decision based on the information they have at that time for the benefit of their business. Now, if a court later decides it's unconstitutional, that's a different issue. Do I think there are cases that violate constitutional rights for a while? That's your position, right? No. My position is, is that statutorily under Title VII, which is the only claim that's being asserted here, because we're not a State actor, that the application of religion is limited to that issue. It being that if there's an undue burden statutorily, it doesn't apply. And I would submit as a matter of law here, under the facts that exist, because the federal government required it, there's pled a basis that is an undue burden. I want to switch very quickly to the ADA claim, because I'm getting low on time. A couple of comments. One, I would say. I thought there was a State action issue here. Well, they have not argued it in their brief. So would it submit to the ex- State VII Iowa and RFRA are claims. And the question I had for opposing counsel is, if the allegation that your client is a State actor is accurate, does that mean there's no damages possible under sovereign immunity? I hadn't thought through that issue. Your Honor, I would say this. At the district court level, there was an objection to both the First and Fourteenth Amendment claims, or really 1983 claims, as well as the RFRA claim. Because those are State actors and there isn't factual basis that my private contractor is a State actor, they've not argued otherwise in the brief. Well, I wonder about that, whether you're making inconsistent arguments here now. Because you just had the defense of the United States government made me do it, the military made me do it. And so if that's true, I don't know if you can claim, nope, not a State actor. You know, we had no involvement with the State. Okay. I think that's a valid point. What I would say is that issue isn't back before you because they haven't argued it. It's been abandoned on appeal. Now, on the ADA, there is a Second Circuit case that came out after our briefing, and I want to alert the Court to it because it directly addresses the regarded as disabled issue. First Court of Appeals decision that I could find that addressed it, that case is. Counsel, would you send us a 28-J letter? I will do that, Your Honor. Thank you. I would submit that that's the logical case to follow. Beyond that, I appreciate your time, and we would request that you affirm the district court on all issues. Thank you, counsel. The case has been thoroughly briefed and argued, and we'll take it under advisement.